**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

**FILED**
JAMES J. WALDRON, CLERK

December 8, 2010

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: /s/Diana Reaves, Deputy

|  |  |
|---|---|
| IN RE | CHAPTER 7 |
| Andrew Harvey Last | CASE NO.: 10-11537 (NLW) |
| Debtor. | |
| Costa Transports, Inc. | Adv. No.: 10-01511 |
| Plaintiff | **OPINION** |
| v. | |
| Andrew Harvey Last | |
| Defendant. | |

**Before:    HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Darren C. Barreiro, Esq.
Greenbaum, Rowe, Smith & Davis, LLP
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ 07095
Attorney for Costa Transports, Inc.

Scott S. Rever, Esq.
Wasserman, Jurista & Stolz, PC
225 Millburn Avenue, Suite 207
P.O. Box 1029
Millburn, NJ 07041
Attorney for Andrew Harvey Last

In this matter Andrew Harvey Last ("Debtor") moves for summary judgment claiming that he is entitled to a discharge under 11 U.S.C. § 727(a)(2)(A). Costa Transports, Inc. ("Costa Transports") cross moves for summary judgment asserting that (i) the Debtor should be denied a discharge under 11 U.S.C. § 727(a)(2)(A) and (ii) the Debtor's counterclaim alleging automatic stay violations under 11 U.S.C. § 362 should be dismissed. Furthermore, Costa Transports seeks leave to file amended complaint. As set forth below, the aforesaid motions are denied.

This court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157 and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984. This matter is a core proceeding under 28 U.S.C. §157(b)(2)(H), (J) and (O).

## STATEMENT OF FACTS

### A. Procedural History

On January 20, 2010, the Debtor filed for relief under Chapter 7 of title 11 of the United States Code ("Bankruptcy Code") and Charles M. Forman ("Trustee") was appointed by the United States Trustee to administer the Debtor's case. On April 15, 2010, Costa Transports filed an adversary complaint ("Complaint") to challenge the Debtor's discharge under 11 U.S.C. § 727 of the Bankruptcy Code[1]. The Complaint contains two counts: (i) an objection to the discharge under 11 U.S.C. § 727(a)(2) and (7); and (ii) a request for declaratory judgment finding that Costa Transports holds an equitable lien against Last's residence at 8 Canterbury Drive, North Caldwell, NJ ("Residence").

---

[1] Unless otherwise indicated, all "Section" or "§" references contained in this opinion are to the Bankruptcy Code of 1978 as amended through the date hereof.

The Debtor timely filed an Answer with affirmative defenses and a counterclaim. The counterclaim requests (i) damages based on Costa Transports' alleged violation of the automatic stay and (ii) avoidance of Costa Transports' lien under § 522(f)(1). Shortly after the Answer was filed, Costa Transports filed a Motion for Leave to File an Amended Complaint Pursuant Rule 7015 and to Dismiss Count One of the Debtor's Counter Claim Pursuant to Rule 7041(b) ("Amendment Motion"). The primary purpose of Costa Transports' Amendment Motion was to join the Trustee as a necessary party to the count asserting an equitable lien against the Residence. In response, the Trustee objects to the Amendment Motion, contending that because the two counts of Costa Transports' Complaint seek divergent relief, separate adversary proceedings are more appropriate.

The Debtor thereafter filed a Cross Motion for a Judgment on the Pleadings or for Summary Judgment ("The Debtor's Summary Judgment Motion"). Subsequently, Costa Transports withdrew its request to dismiss Count One of the Debtor's Counterclaim, answered the Debtor's Counterclaim, and filed a Summary Judgment Motion to Deny the Debtor's Discharge under Section 727 and Dismiss Count One of the Debtor's Counterclaim Alleging Violation of Automatic Stay ("Costa Transports' Summary Judgment Motion"). The Debtor objected to Costa Transports' Summary Judgment Motion.

Though not a party to this adversary proceeding, the Trustee filed several letter briefs objecting to Costa Transports' claimed equitable lien. Subsequently, Costa Transports filed a brief responding to the letter briefs of the Trustee and in further support of its Motion to Leave.

After conducting a hearing on the motions, this court reserved its ruling and allowed the Trustee, Costa Transports and the Debtor to further brief the question of whether the equitable

lien issue should be determined in the instant adversary proceeding or resolved in a separate litigation.

**B. <u>The Underlying Debt and the Arbitration Proceeding</u>**

Last is the owner of two companies, Everlast Logistics, LLC and Blue Star Logistics, LLC ("Companies"), currently also in Chapter 7 liquidation.

In July 2007, Companies purchased a trucking business from Costa Transports for the sum of $1,065,000.00. (Certification of Andrew Last ("Last Cert.") ¶ 2) To satisfy the purchase price, a loan in the amount of $832,500.00 was obtained from GE Capital and Companies executed a Promissory Note ("Note") in favor of Costa Transports for 232,500.00. (Last Cert. ¶ 2; Adversary Complaint ¶ 3)  Last also executed a personal guaranty of the Companies' obligations to Costa Transports. (Last Cert. ¶ 2; Adversary Complaint ¶ 4)  Companies made monthly payments under the Note for the period September 2007 through January 2008, but ceased making payments thereafter. (Adversary Complaint ¶ 6-7)  The Debtor alleges that Companies stopped making payments on the Note because, while Costa Transports represented in the purchase agreement that no customer had terminated or reduced its business with Costa Transports in the eight months prior to the closing, 25% of the business volume was lost within 30 days of closing. (Last Cert. ¶ 3)  Thus, the Debtor claims that he believed that Costa Transports was in violation of the terms of the purchase agreement between Costa Transports and Companies. (*Id.*)

Subsequent to the Companies' cessation of payments, in August 2008, Costa Transports accelerated the Note and demanded payment in full. (Adversary Complaint ¶ 8)   After

4

acceleration of the Note and demand for payment, the parties engaged in settlement discussions. (Last Cert. ¶ 5)  On or about October 7, 2008, in the middle of the settlement discussions, Costa Transports served a Demand for Arbitration ("Arbitration Demand") upon the Debtor and Companies. (*Id.* ¶ 6; Adversary Complaint ¶ 12)  Costa Transports sought the Debtor's consent to submit to arbitration as only Companies, not the Debtor, were subject the mandatory arbitration clause. (Adversary Complaint ¶ 15)  Costa Transports asserts that on October 31, 2008, the Debtor notified Costa Transports that he would not submit to arbitration. (*Id.* ¶ 16; *see also Id*. Ex. C)  Arbitration hearings were held with regard to Costa Transports' claims against companies and a final award was entered in Costa Transports' favor and against Companies on February 25, 2009. (*Id.*  ¶ 14)

## C.  The Alleged Fraudulent Conveyance

In May, 2008, the Debtor and his wife entered into a contract to purchase the Residence. (Certification of Christine Last ("C. Last Cert.") ¶ 4)  At about the same time, the Lasts sold their prior residence realizing net proceeds of $112,000.00. (*Id.* ¶ 5)  The Debtor and Christine Last then allegedly moved into the Residence and attempted to secure a mortgage loan to finalize its purchase. (*Id.* ¶ 6-7)

Christine Last claims she had to qualify for a mortgage in her name only because of the Debtor's business debts and minimal income. (*Id.* ¶ 7)   Christine Last contends that because the mortgage was obtained solely by her, she intended to purchase the Residence in her name only. (*Id.* ¶ 9)  Furthermore, she asserts that the downpayment of $185,000.00 came mostly from her funds. (*Id.* ¶ 10)  Specifically, Christine Last certified as to the following:

5

> Part of the down payment came from a loan from my 401(k) account and a portion was from my personal savings. While some of the down payment came from the proceeds from the sale of the Bethpage Property that was owned by my husband and I, we considered the net proceeds to be my funds to reimburse me for my portion of the funds my husband used to operate his business. When my husband purchased his business from Costa, my husband used approximately $70,000.00 of our joint funds to operate the business.

(C. Last Cert. ¶ 10)

On or about July 18, 2008, the Debtor and Christine Last took title to the Residence. (Initial Andrew Last Certification ¶ 4) Christine Last claims that at the closing for the Residence, "some of the documents mistakenly reflected that my husband and I were purchasing the property together. The deed and the mortgage had both of our names on them however, the Note was in my name only." (C. Last Cert. ¶ 12) Christine Last claims that she advised the attorney at the closing of this mistake. (*Id.* ¶ 13) She further states that in order not to delay the closing, the documents were executed with the expectation that the Debtor would reconvey his interest in the Residence shortly thereafter. (*Id.* ¶ 13-14) The real estate agent in the matter, Denny Tsettos, who was also present at the closing, certifies as to the same. (Certification of Denny Tsettos ("Tsettos Cert.") ¶ 3-4) Approximately four months later, on November 18, 2008, the Debtor executed a deed transferring his interest in the Residence to Christine Last in consideration for $1. (C. Last Cert. ¶ 16; Adversary Complaint ¶ 19)

In December 2008, Costa Transports filed a complaint against the Debtor in the Superior Court of New Jersey to enforce the guaranty. (Adversary Complaint ¶ 17) The Debtor did not answer the complaint and a default judgment was entered against him. (*Id.* Ex. D) Costa Transports also commenced another proceeding in the Superior Court of New Jersey to avoid the Debtor's transfer of his interest in the Residence as a fraudulent transfer on April 1, 2009 ("State

6

Court Fraudulent Transfer Action"). (*Id.* ¶ 22)  Pending the resolution of that litigation, Costa Transports filed a *lis pendens* on the Residence. (*Id.* ¶ 23)   On December 11, 2009, upon advice of the Debtor's bankruptcy attorney, Christine Last reconveyed one-half interest in the Residence to the Debtor in light of his impending bankruptcy petition filing. (C. Last Cert. ¶ 21-22)

D.  **Alleged Automatic Stay Violations**

    1.    **Postpetition State Judgment**

Just prior to the Debtor's bankruptcy filing, Costa Transports moved for summary judgment in the State Court Fraudulent Transfer Action on its counts for an accounting and for turnover of funds. (Certification of Scott Rever, Esq. in Opposition to Costa Transports' Motion for Leave to File an Amended Complaint Pursuant to Rule 7015 and to Dismiss Count One of The Debtor's Counterclaim Pursuant to Rule 7041(b) ("Rever Cert.") ¶ 4)  The Debtor did not oppose the motion, and on January 22, 2010, two days after the Debtor's bankruptcy filing, the state court entered an order granting summary judgment in Costa Transports' favor. (*See* Adversary Complaint ¶ 24; Rever Cert. ¶ 5)  On January 26, 2010, Costa Transports' counsel transmitted a letter to the Debtor's attorney advising that "I have enclosed a copy of an Order signed by Judge Coleman prior to your clients' bankruptcy filing, compelling turnover of assets levied upon, an accounting and other relief." (Rever Cert. ¶ 6)  Subsequently, the Debtor's attorney replied that the order was entered after the Debtor's bankruptcy petition filing and that it was void and in violation of automatic stay. (*Id.* ¶ 7)  In a subsequent email communication, the Debtor's attorney asked for the order to be vacated.  (*Id.* ¶ 8 )

Costa Transports refused to vacate the order, claiming it to be as an unnecessary step, and advised the Debtor's attorney to prepare a consent order if he wished the order to be vacated. (*Id.*) The Debtor's attorney declined to do so, as he did not want to incur additional expenses for the Debtor. (*Id.*) Notably, Costa Transports did send a letter to the state court on January 22, 2010, advising the state court of the Debtor's bankruptcy filing and copied the Essex County Sheriff. (Certification of Darren Barriero, Esq. in Support of Costa Transports' Notice of Motion for Summary Judgment ("Barriero Cert.") ¶ 18)

### 2.     Filing of the Instant Adversary Proceeding

The Debtor further asserts that filing of the instant adversary proceeding violates the automatic stay. The Debtor, rather than the Trustee, was named as defendant in the count to establish Costa Transports' equitable lien. (Barriero Cert. ¶ 16; Rever Cert. ¶ 11) The Debtor claims that by filing the adversary proceeding and forcing him to defend an action that should have been asserted against the Trustee and the bankruptcy estate, Costa Transports' efforts violated 11 U.S.C. §362(a)(1)-(6). (Rever Cert. ¶ 11-13)

### 3.     Alleged Postpetition Collection Efforts by the Costa Transports

According to the Debtor, in the course of a conversation with Americo Costa ("Mr. Costa"), the principal of the Costa Transports, Mr. Costa advised him that he would consider withdrawing his claims if the Debtor would pay him $2,000.00 per month. (Initial Andrew Last Certification ¶ 9) Mr. Costa does not recall having such a conversation. (Certification of Americo Costa in Support of Costa Transports' Motion for Summary Judgment ("Costa Cert.") ¶ 3) Instead, Mr. Costa claims that the Debtor approached him lamenting about the need to file for

8

bankruptcy. (*Id.*)  Mr. Costa recalls responding that if the Debtor had only agreed to pay Costa Transports $2,000.00, the Debtor would not have had to file for bankruptcy. (*Id.*)

## DISCUSSION

**I.  Summary Judgment Motions**

    **A.**    <u>**Summary Judgment Standard**</u>

Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Federal Rules of Bankruptcy Procedure 7056, provides for summary judgment where "the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.  On a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   An issue of material fact is considered genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A properly supported motion for summary judgment "will not be defeated by the mere existence of some factual dispute between the parties," unless the dispute over those facts has the potential to affect the lawsuit's outcome. *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995).

The moving party bears the initial burden of proving an absence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323; *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038 (1977). "Once a case has been made in support of summary judgment, [the burden shifts and] the party opposing the motion has the affirmative

burden of coming forward with *specific* facts evidencing a need for trial." *Ponzoni v. Kraft Gen. Foods, Inc.,* 774 F. Supp. 299, 308 (D.N.J. 1991), *aff'd,* 968 F.2d 14 (3d Cir. 1992) (emphasis in original); *Anderson,* 477 U.S. at 250.

Because only the existence of a genuine issue of fact can defeat a motion for summary judgment, "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249. Additionally, when parties submit cross-motions for summary judgment "each motion must be considered on its own merits, and both may be denied." *In re United Auto Mart, Inc.*, 2009 WL 1749061, *3 (Bankr. D.N.J. June 19, 2009) (citing William W. Schwarzer et al. *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (1992)). Further, "even though each party believes it is entitled to recover as a matter of law, genuine factual disputes may remain" and "courts are no more permitted to resolve such disputes on cross-motions for summary judgment than on a single motion." *Id.*

### B. Fact Issues Preclude Summary Judgment

#### 1. Denial of Discharge Under § 727(a)(2)(A)

Section 727(a)(2)(A) provides, in relevant part:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--

(A) property of the debtor, within one year before the date of the filing of the petition…

11 U.S.C. § 727(a)(2)(A).

In general, § 727 is to be construed liberally in favor of the debtor and strictly against those objecting to discharge. *Rosen v. Bezner,* 996 F.2d 1527, 1531 (3rd Cir. 1993), *see also First Beverly Bank v. Adeeb* (*In re Adeeb),* 787 F.2d 1339, 1342 (9th Cir. 1986) (citing *In re Devers,* 759 F.2d 751, 754 (9th Cir. 1985)). Completely denying discharge, as opposed to avoiding a transfer or declining to discharge an individual debt, is an extreme step and should not be taken lightly. *Rosen*, 787 F.2d at 1531. To prevail on a § 727(a)(2)(A) cause of action, a party must prove by a preponderance of the evidence: (1) a disposition of property, such as transfer or concealment; (2) a subjective intent on the debtor's part to hinder, delay, or defraud one or more creditors or the bankruptcy trustee through that disposition; and (3) that both the disposition and improper intent occurred within one year before the petition date. *Id.*

If a creditor demonstrates by a preponderance of the evidence that the debtor actually intended to hinder, delay, or defraud the creditor, the court can deny discharge. *Vill. of San Jose v. McWilliams,* 284 F.3d 785, 790 (7th Cir. 2002) (citing *In re Keeney*, 227 F.3d 679, 683 (6th Cir. 2000); *In re Scott*, 172 F.3d 959, 966-67 (7th Cir. 1999)). The intent must be an actual intent and cannot be constructive. *Vill. of San Jose*, 227 F.3d at 790. *See also Future Time, Inc. v. Yates,* 26 B.R. 1006, 1007 (M.D. Ga. 1983); *Bank of Pa. v. Adlman (In re Adlman)*, 541 F.2d 999, 1003 (2d Cir. 1976). The actual intent may be established by circumstantial evidence or inferred from the debtor's conduct. *Scimeca v. Umanoff*, 169 B.R. 536, 542-43 (D.N.J. 1993); *Corona v. JRC Lumber Corp. (In re Corona)*, 2010 WL 1382122, *10 (Bankr. D.N.J. Apr. 5, 2010); *In re Kablaoui*, 196 B.R. 705, 709 (Bankr. S.D.N.Y. 1996).

      2.    **"Continuous Concealment" Doctrine**

A threshold issue exists as to whether the act warranting denial of discharge occurred

within the one year period preceding the bankruptcy. The Debtor deeded his interest in the Residence to Christine Last on November 18, 2008. Since conveyance to Christine Last occurred more than a year before the January 20, 2010 petition date, Costa Transports challenges the Debtor's discharge under the "continuous concealment" doctrine articulated in *Rosen*. Specifically, the Third Circuit Court of Appeals held that "concealment will be found to exist during the year before bankruptcy even if the initial act of concealment took place before this one year period as long as the debtor allowed the property to remain concealed into the critical year," thus warranting a possible denial of discharge under § 727(a)(2)(A). *Rosen*, 996 F.2d at 1531 (citing *In re Oliver*, 819 F.2d 550, 555 (5th Cir. 1987)). Importantly, however, the court in *Rosen* pointed out that "what is critical under the concealment provision of § 727(a) is whether there is a concealment of *property*, not whether there is concealment of a transfer." *Id.* at 1532 (italics in the original). The court further stated:

> In a situation involving a transfer of title coupled with retention of the benefits of ownership, there may, indeed, be a concealment of property. Where this is the case, however, the concealment is present not because retention of the benefits of ownership conceals the fact that the debtor no longer has legal title, but rather because the transfer of title represents to the world that the debtor has transferred away all his interest in the property while in reality he has retained some secret interest-a secret interest of which retention of the benefits of ownership may be evidence. A legally relevant concealment can exist, however, only if there is, in fact, some secret interest in the property retained by the debtor.

*Id.* (citations and footnote 4 omitted).

In *Rosen* the court found that the fact that the Debtor continued to live in the property after transfer of his interest to his wife did tend to indicate that Rosen retained a secret interest. *Id.* However, the court further noted that from the record before it, as a matter of law, it could not conclude that Rosen retained a secret interest. *Id.* It observed that it was possible that Rosen

12

may have actually transferred all of his interest in the property to his wife, and may only have been living in the residence at his wife's sufferance. *Id.* Because the factual record was not significantly developed, the Third Circuit remanded the matter for a factual determination as to whether Rosen retained a secret interest in the property. *Id.*

In the matter at hand, we have a similar factual issue in need of resolution. For example, the Debtor states that his interest in the Residence was deeded to Christine Last in order to correctly reflect the intended ownership of the Residence. Further, Christine Last and the real estate broker representing them have certified that at closing the deed and other documents incorrectly reflected joint ownership, but that the decision was made to close the purchase transaction and correct the documents later. Further, Christine Last has stated that virtually all of the monies to purchase the Residence came from her funds. These facts suggest that there was no intent to convey a property interest to the Debtor, and thus no intent to conceal a property interest.

On the other hand, Costa Transports points out that Companies had defaulted on their payment obligations in the early Spring of 2008 prior to acquisition of the Residence. Further, in October 2008, one month prior to the Debtor's transfer of his interest in the Residence, Costa Transports served its Arbitration Demand on Companies and the Debtor because of the payment default by Companies. Costa Transports also observes that the Debtor continues to reside at the Residence and enjoy all of its benefits. The few facts available make either scenario plausible. Thus, much like in *Rosen*, the factual record in this matter is both conflicting and underdeveloped as to whether the Debtor held a secret interest in the Residence after he deeded

his interest to Christine Last.[2]

This insufficient factual record is significant because unless the concealment of a secret interest in the Residence can be found to have continued into the year preceding the bankruptcy, the issue of the Debtor's intent to hinder, delay or defraud a creditor is not reached, and the court should not consider the issue raised by the parties: whether a debtor's retransfer to himself of property previously conveyed to another prevents denial of discharge under § 727(a)(2)(A) if the retransfer is accomplished prior to the debtor's bankruptcy.[3]

### 3. Retransfer of Previously Conveyed Property and Denial of Discharge Under §727(a)(2)(A)

Moreover, if we ultimately reach the question of the effect of the Debtor's prepetition retransfer of his interest in the Residence on Costa Transports' § 727(a)(2)(A) objection to discharge, presumably the parties will have engaged in (and completed) their discovery. At that point, the court should have before it a better developed factual foundation for considering the applicable case authority. There is no controlling authority in this Circuit and the cases are decidedly split on whether a prepetition retransfer of property to the debtor of property previously transferred to another prevents denial of discharge under § 727(a)(2)(A).

The decisions reached by the Ninth Circuit and Eleventh Circuit are illustrative of the divergent approaches. In *First Beverly Bank v. Adeeb (In re Adeeb)*, the court examined the language of § 727(a)(2)(A) and its policies and determined that "In our view, reading

---

[2] As of the submission of the motions the parties had not yet undertaken discovery in this adversary proceeding.

[3] The Third Circuit long ago cautioned that bankruptcy courts cannot issue advisory opinions. *See In re Heldor*, 989 F.2d 702, 707 n.8 & 708 (3d Cir. 1993).

14

'transferred' as used in § 727(a)(2)(A) to mean 'transferred and remained transferred' is most consistent with the legislative purpose of the section." 787 F.2d 1339, 1344 (9th Cir. 1986). Further, after considering the benefit of permitting the honest debtor to undo his mistakes and other practical considerations, the Ninth Circuit stated:

> We conclude that a debtor who transfers property within one year of bankruptcy with the intent penalized by section 727(a)(2)(A) may not be denied discharge of his debts if he reveals the transfers to his creditors, recovers substantially all of the property before he files his bankruptcy petition, and is otherwise qualified for a discharge.

787 F.2d at 1345.

On the other hand, in *Davis v. Davis (In re Davis)*, the court saw no reason to interpret the meaning of the language of § 727(a)(2)(A) in light of policy concerns. 911 F.2d 560 (11th Cir. 1990). Rather, it applied a plain meaning approach stating that:

> The statutory language of section 727(a)(2)(A) is plain and unambiguous. Congress certainly was capable of drafting a statute which would deny a discharge only when assets were fraudulently transferred and remained transferred at the time of filing of bankruptcy proceedings, but it did not.

911 F.2d at 562.

Notably, both *Adeeb* and *Davis* were decided after a factual foundation was established at trial. Given the effect of denial of discharge on the Debtor, this court should also make its decision only upon an adequate record.

### 4. Violation of Automatic Stay Under § 362(a)

As set forth in greater detail earlier in this opinion, the Debtor asserts that the following postpetition conduct by Costa Transports violated the automatic stay:

- Counsel for Costa Transports erred by serving the Debtors with the state court order entered postpetition and by failing to vacate the order.

- Costa Transports violated the automatic stay by including an equitable lien as Count Two in its adversary proceeding against the Debtor.

- The Debtor claims that the principal of Costa Transports sought payment of $2,000.00 a month in exchange for Costa Transports withdrawing its claim.

Section 362(a)(1)-(6) provides, in relevant part:

(a) …[Bankruptcy] petition fil[ing]… operates as a stay, applicable to all entities, of—

  (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

  (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

  (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

  (4) any act to create, perfect, or enforce any lien against property of the estate;

  (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

  (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title

11 U.S.C. § 362(a)(1)-(6).

Furthermore, "an individual injured by any willful violation of stay… shall recover actual damages including costs and attorneys fees, and in appropriate circumstances may recover punitive damages." 11 U.S.C. §362(k)(1).

### (a) Postpetition State Judgment

Costa Transports contends that the transmittal of the order was purely a ministerial act and did not constitute a continuation of the judicial proceeding in violation of the automatic stay. On this issue, the court agrees with Costa Transports. The letter transmitting the order made no demand for payment by the Debtor, and merely informed the Debtor's counsel of the action by the state court.

In *Sakhrani v. Escala,* Judge Sheridan pointed out that "[t]he courts have long established that simple and ministerial acts in litigation that occur post filing do not constitute a continuation of the judicial proceeding in violation of the automatic stay." 2006 WL 2376746, *3 (D.N.J. Aug. 16, 2006) (citations omitted). In *Sahhrani*, the state court had entered an order post-petition memorializing the pre-bankruptcy ruling. *Id*. The state judge directed the law firms representing the prevailing parties to serve the order on the debtor. *Id.* The debtor claimed that the entry and service of the state court order was in violation of the automatic stay. *Id.* The district court appropriately found the conduct to be ministerial and not violative of the automatic stay. *Id.* Nor was Costa Transports or its counsel under an obligation to vacate the order. A judgment in violation of automatic stay is void and without effect, and vacating such judgment is merely a formality. *Raymark Indus., Inc. v. Lai,* 973 F.2d 1125, 1132 (3d Cir. 1992) (citing *In re James*, 940 F.2d 46, 52 (3d Cir. 1991)).

Importantly, counsel for Costa Transports also notified the Superior Court of New Jersey and the Essex County Sheriff's Office of the Debtor's bankruptcy petition filing, thereby indicating no intention to enforce the order. Thus, the mere entry of the order and its service are not in violation of the automatic stay.

17

**(b)    Filing of the Instant Adversary Proceeding**

On the other hand, by including an equitable lien claim in its adversary complaint Costa Transports violated the automatic stay under § 362(a)(1)-(6). For example, asserting an equitable lien is a continuation of the State Court Fraudulent Transfer Action and is most certainly an act to enforce a lien. Costa Transports suggests that its conduct is little different from filing a proof of claim. However, an important distinction does exist: a proof of claim in this case would not require an answer from the Debtor. However, the extent of the injury to the Debtor as the result of such violation is not currently apparent to the court and the Debtor's counterclaim can be adjudicated along with Costa Transports' § 727(a)(2)(A) claim.

**(c)    Alleged Postpetition Collection Efforts by Mr. Costa**

While the content of the conversation between the Debtor and Mr. Costa is highly disputed, any collection efforts by Mr. Costa, if established, could be in violation of § 362(a)(6). But it is also plausible that, as Costa Transports contends, Mr. Costa made certain assertions in the course of discussions to settle this adversary proceeding which would not violate the automatic stay.

As set forth in the preceding paragraphs, dismissal of the Debtor's counterclaim relating to the filing of the instant adversary proceeding and alleged post-petition collection efforts by Costa Transports is inappropriate as aforementioned disputed fact issues remain.

**II.    Amendment Motion**

Federal Rule of Civil Procedure 15, made applicable by Federal Rule of Bankruptcy

Procedure 7015, provides, in relevant part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Moreover, pursuant to Federal Rule of Civil Procedure 21, made applicable by Federal Rule of Bankruptcy Procedure 7021, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against the party." It is within the sound discretion of the court whether to sever a claim in a litigation. *Rodin Properties-Shaw Mall v. Cushman & Wakefield of Pa., Inc., et al.,* 49 F. Supp. 2d 709, 721 (D.N.J. 1999). Any conflict or ambiguity resulting from comparison of Federal Rule of Civil Procedure 21 which is written in specific terms, and Federal Rule of Civil Procedure 15, which refers in general terms to the broad subject of changes in pleadings by amendment, must be resolved in favor of the specific and against the general. *See Pac. Gas & Elec. Co. v. Fibreboard Products, Inc.*, 116 F. Supp. 377, 382-83 (D.C.Cal. 1953).

> When deciding a motion to sever, a court should consider:
>
> (1) whether the claims arise out of the same transaction or occurrence;
> (2) whether the claims present some common questions of law or fact;
> (3) whether settlement of the claims or judicial economy would be facilitated;
> (4) whether prejudice would be avoided if severance were granted; and
> (5) whether different witnesses and documentary proof are required for the separate claims.

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig.*, 247 F.R.D. 420, 424 (S.D.N.Y. 2007) (citing *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 214 F.R.D. 152, 154-55 (S.D.N.Y. 2003).

As the Trustee contends, although the underlying events which give rise to Costa Transports' claim of equitable lien are the same as the events which give rise to Costa

19

Transports' § 727(a)(2)(A) claim, the nature of the claims and the affected parties are different. The objection to discharge does not seek to impose a secured claim against estate property and does not require the Trustee as a party. Likewise, the equitable lien claim affects only the bankruptcy estate and requires the Trustee as a party, but not the Debtor. Separating the two counts of the Complaint will not impede judicial economy because both counts involve the application of different law and proofs. Moreover, judicial economy is likely to be served by severing the equitable lien claim, as it is much more susceptible to resolution by summary judgment rather than trial, and such discovery as may be required, is likely to be limited. Thus, for the reasons enumerated above, Costa Transports' Amendment Motion is denied. Instead, the equitable lien claim shall be severed pursuant to Rule 21.

## CONCLUSION

For the reasons set forth above the summary judgment motion by the Debtor and the cross-motion for summary judgment by Costa Transports are denied. Costa Transports' Amendment Motion is denied and the equitable lien claim is hereby severed from this adversary complaint.

Dated: December 8, 2010                    /s/_____

NOVALYN L. WINFIELD

United States Bankruptcy Judge